Filed 2/3/26  Independent Financing Services v. Assemi Brothers CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| INDEPENDENT FINANCING SERVICES, LLC, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ASSEMI BROTHERS, LLC, <br><br> Defendant and Appellant. | F087461 <br><br> (Super. Ct. Nos. 19CECG03249, 20CECG01363, 20CECG01378) <br><br><br> **OPINION** |
| INDEPENDENT FINANCING SERVICES, LLC, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DARIUS ASSEMI et al., <br><br> Defendants and Appellants. | F087463 <br><br> (Super. Ct. Nos. 19CECG03249, 20CECG01363, 20CECG01378) |

| | |
|---|---|
| INDEPENDENT FINANCING SERVICES, LLC,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>KEVIN ASSEMI,<br><br>      Defendant and Appellant. | F087465<br><br>(Super. Ct. Nos. 19CECG03249, 20CECG01363, 20CECG01378) |

APPEAL from a judgment of the Superior Court of Fresno County.  Jeffrey Y. Hamilton, Jr., Judge.

Estes Law Group and Polly J. Estes for Defendants and Appellants Assemi Brothers, LLC, Darius Assemi, Farid Assemi, Farshid Assemi, and Neema Assemi.

Boutin Jones and Michael G. Cross for Defendant and Appellant Kevin Assemi.

Horvitz & Levy, David M. Axelrad and Mitchell C. Tilner; Roll Law Group, Kristina M. Diaz and Matthew D. Moran for Plaintiff and Respondent.

-ooOoo-

This case involves consolidated appeals of separate judgments rendered in two of three consolidated lawsuits.  The appeals do not challenge any determination made in the lead case (Fresno County Superior Court case No. 19CECG03249), brought by Assemi Brothers, LLC (Assemi Brothers) and numerous affiliated or aligned individuals and companies[1] against Wonderful Pistachios & Almonds LLC (Wonderful Pistachios) and

---

[1] The other Assemi lawsuit plaintiffs (as named in the governing second amended complaint) are Darius Assemi, Farshid Assemi, 104 Pistachios, LLC; ACDF, LLC; Cantua Orchards, LLC; Derrick Pistachios, LLC; Gradon Farms, LLC; Granville Farms, LLC; Kamm Pistachios, LLC; Lincoln Grantor Farms, LLC; Maricopa Orchards, LLC; Panoche Pistachios, LLC; Sageberry Farms, LLC; Sommerville Farms, LLC; Three Rocks Pistachios, LLC; Touchstone Pistachio Company, LLC; Tuscan Farms, LLC; and Waterford Farms, LLC.

several other companies or associations affiliated or aligned with it[2] for breach of contract, breach of the implied covenant of good faith and fair dealing, unfair competition and declaratory relief in connection with a memorandum of understanding (MOU) for the delivery, purchase and sale of pistachios (the Assemi lawsuit).[3] Rather, the appeals challenge the judgments rendered in each of the remaining consolidated cases.

Specifically, appellant Assemi Brothers appeals from the separate judgment entered against it and in favor of respondent Independent Financing Services, LLC (W-IFS),[4] a company affiliated with Wonderful Pistachios, in Fresno County Superior Court case No. 20CECG01378 (case No. 20CECG01378) (the W-IFS promissory note lawsuit). Judgment was entered after the trial court granted summary adjudication in favor of W-IFS on its claim for breach of a promissory note and W-IFS dismissed its remaining claim.

In addition, appellants Darius Assemi (Darius), Farid Assemi (Farid), Farshid Assemi (Farshid), Kevin Assemi (Kevin), and Neema Assemi (Neema)[5] (collectively,

Kamm South, LLC; and Manning Avenue Pistachios, LLC, were named as plaintiffs in the original and first amended complaint but were omitted as named plaintiffs in the second amended complaint.

[2] The other named defendants in the Assemi lawsuit (as named in the governing second amended complaint) are Wonderful Growers Cooperative; Wonderful Almond Cooperative; The Wonderful Company LLC; and Independent Financing Services, LLC. The claim against Independent Financing Services, LLC, was subsequently dismissed without prejudice.

[3] Wonderful Pistachios and other of its affiliated associations cross-complained in the Assemi lawsuit. A copy of the cross-complaint is not included in the record on appeal.

[4] To assist the reader, we will place a "W" before any moniker or abbreviation used herein to identify a company or cooperative affiliated or aligned with Wonderful Pistachios if the moniker/abbreviation does not include the word "Wonderful."

[5] Because several Assemi family members involved in the lawsuit share the same surname, we often refer to each by his first name only. No disrespect is intended.

Assemi guarantors) appeal from the separate judgment rendered against them and in favor of W-IFS in Fresno County Superior Court case No. 20CECG01363 (case No. 20CECG01363) (the W-IFS guaranty lawsuit), after the trial court granted summary adjudication in favor of W-IFS on its claim for breach of personal guaranties.

We affirm both judgments.

## FACTS AND PROCEDURAL BACKGROUND

Assemi Brothers, along with its affiliated companies, are in the business of farming pistachios and almonds. Wonderful Pistachios, previously known as Paramount Farms International LLC (W-Paramount), along with affiliated companies and/or cooperatives, are in the business of processing, marketing, and selling pistachios and almonds, including those grown by other farming concerns. W-IFS is a finance company that provides business loans.

## I. Factual Background

The following facts are largely undisputed and are drawn primarily from the parties' various separate statements of undisputed material facts in support and opposition to W-IFS's motions for summary judgment/adjudication:

On March 31, 2014, W-Paramount, on behalf of itself and its affiliates, and Assemi Brothers, on behalf of itself and its affiliates that are "more than 50 [percent] owned collectively by Farid . . . , Farshid . . . and Darius," entered into two binding MOU's. (Assemi Brothers and these affiliates are referred to collectively as the Assemi Growers.)

### A. The Pistachio MOU

One of the MOU's at issue obligated Assemi Brothers to contribute 100 percent of the Assemi Growers' pistachios grown during a five-year period (i.e., through the end of crop year 2019, ending August 31, 2020) and two million pounds of the Assemi Growers' almonds grown during a two-year period (i.e., through the crop year ending August 31, 2016), to unspecified W-Paramount controlled cooperatives (the Pistachio MOU). It

4.

contained terms related to the Assemi Growers' compensation, right to terminate the agreement, and other related matters.

### B.    The Loan MOU

The second MOU at issue memorialized W-Paramount's agreement with Assemi Brothers to provide financing (through itself or its affiliates) to the Assemi Growers (the Loan MOU).  The Loan MOU provided that W-Paramount (or its affiliates) would provide the Assemi Growers a revolving loan in the amount of $50 million by May 1, 2014, upon timely receiving acceptable financial information from the Assemi Growers, and would increase that amount to $65 million in 2016, then $75 million in 2017, so long as the loan was not in default.  The loan required interest only payments and would "mature 50% on August 31, 2020[,] and 50% on August 31, 2021, subject to acceleration upon terms to be agreed."  The Loan MOU required Farid, Farshid, Darius, Kevin, and "one of the four other children of Farid, Farshid and Darius" to personally guaranty repayment of the loan.

### C.    The Promissory Notes

#### 1.  *Original Promissory Note*

On May 23, 2014, Assemi Brothers executed a revolving promissory note (original promissory note) in favor of W-IFS to secure a revolving line of credit in the initial principal amount of $35 million, which, subject to various terms and conditions, was scheduled to increase in principal amount to $50 million on April 1, 2016, then to $65 million on September 30, 2016, then to $75 million on April 1, 2017.  It defined an "Event of Default" to include, without limitation, "At any time [W-Paramount] or its affiliates process less than 100% of the Pre-2020 Crop" (hereafter, pistachio processing default provision), the occurrence of which would allow W-IFS to accelerate the outstanding debt.  Unless accelerated, the loan was scheduled to mature on August 31, 2020 (as to 50 percent of the outstanding loan balance) and the remainder was scheduled to mature on August 31, 2021.

## 2. *First Amended Promissory Note*

On August 20, 2015, Assemi Brothers executed an amended and restated promissory note (first amended promissory note). It substituted the Resnick Foundation (W-Resnick Foundation) in place of W-IFS as the "Noteholder." The first amended promissory note set the maximum outstanding principal amount at $35 million and required Assemi Brothers to make five principal payments totaling $30 million to occur beginning February 1, 2016, and culminating with a payment on April 1, 2017. Unlike the original promissory note, it did not include the pistachio processing default provision. Assuming no acceleration of the debt, the loan was scheduled to mature on December 1, 2017.

## 3. *Second Amended Promissory Note*

On January 29, 2016, Assemi Brothers executed a second amended and restated promissory note (second amended promissory note).[6]

## 4. *Third Amended Promissory Note*

On November 30, 2016, Assemi Brothers executed a third amended and restated promissory note (the third amended promissory note), which is at issue in this litigation. It identified W-IFS as the "Noteholder" and acknowledged an existing principal balance on the note of $20 million. It provided for an initial maximum principal balance of $20 million and, subject to various terms and conditions, provided seven scheduled increases in the maximum outstanding principal balances over the course of the next two years. It included the pistachio processing default provision and provided for acceleration of the debt if the provision is triggered.

---

[6] The record on appeal includes two versions of the second amended promissory note, one in which W-Resnick Foundation continued to be named the "Noteholder" and another in which W-IFS was identified as "Noteholder." The terms of these two versions differ. No explanation is provided as to why there are two versions. We view this discrepancy as immaterial since it is the third amended promissory note that is at issue.

W-IFS provided funds to Assemi Brothers as agreed, and "[f]or the next few years," a Wonderful Pistachios affiliate (unidentified in the record on appeal) paid the Assemi Growers "consistent with the terms of the Pistachio MOU." (Unidentified affiliates of Wonderful Pistachios are sometimes referred to merely as "Wonderful," in quotation marks.)

### D. Guaranties

The third amended promissory note and all prior versions thereof were separately guaranteed by each of the Assemi guarantors.

### E. Early 2019 Correspondence

On February 6, 2019, Danielle Filipponi of Maricopa Orchards, LLC—a company the Assemi lawsuit plaintiffs alleged in their original complaint to be the "the entity that manages [the Assemi Growers'] farming operations"—sent an e-mail to "Wonderful" advising that three entities, Kamm South, LLC, Manning Avenue Pistachios, LLC, and McConnell Farms, LLC, would not be sending "Wonderful" their 2019 pistachio crops for processing. She clarified that "none of these entities are members of the [Wonderful Pistachio Growers] Co-Op or majority owned by the three Assemi brothers." The message was forwarded to Andy Anzaldo of "Wonderful."

On March 29, 2019, Anzaldo wrote Kevin Assemi and advised, "[w]e believed these [three] companies were affiliated and covered under the Assemi agreement and . . . would deliver 100% of their pistachios to us through CY19 [i.e., Crop Year 2019],[7] which is why we don't have separate agreements for these companies. The pistachios from these ranches have been delivered to us for many years and you have also verbally represented these acres as part of all of our previous negotiations, and we have relied on these representations." Anzaldo asked Kevin to reconsider the Assemi position.

---

[7] The parties often use "CY" to abbreviate the term "crop year."

On April 8, 2019, Kevin responded to Anzaldo's e-mail. His response reads, in part: "My suspicion is that you thought since Kamm South and Manning Ave have been sending their crop to you, they are somewhat included in our agreement. [¶] Our agreement[] requires us to send pounds from all ranches that we own a majority interest in. We have zero ownership in McConnell, as we sold that 60 acre ranch. As for Kamm South and Manning Avenue Pistachios we are not majority owners and that is why our agreements with Wonderful expressly called them out as not being part of the exclusivity." Kevin confirmed, "we are of course sending all our [pounds] that we have a major[it]y ownership in to Wonderful."

On April 22, 2019, Anzaldo responded to Kevin and acknowledged his error, as follows: "Back in 2005, Farid and Darius signed for Kamm South and Farid for Manning Ave. I realize since this time, the Assemi Group went through numerous ownership changes and as you stated below, the Assemi's are not majority owners in Kamm South and Manning Ave, and no longer control McConnell. [¶] Can you please send us who is the majority decision maker for these entities because we believed they were included in the 2014–2019 Assemi contract terms?"

### F.    Events Leading to Dispute

On August 15, 2019, Filipponi wrote Bianca McCarthy of "Wonderful" and inquired as to the "timing of payments of the 2018 Non-Coop Bonus that will be finalized in October 2019," whether an advance on the bonus could be requested, and, if so, on what terms. McCarthy advised it was possible to request an advance and she and Filipponi exchanged several e-mails concerning the terms.

On August 27, 2019, Anzaldo e-mailed Kevin. We set out the text from the body of the e-mail in full, since it appears this e-mail and others that followed led to the disputes now at issue:

> "As harvest approaches this week, I wanted to follow-up from our conversation of <u>May 2nd</u>. During this conversation, I informed you that

8.

eligibility for the 2018 Wonderful Grower Partner Bonus had not been determined. However, I did confirm that growers who do NOT have a contract to deliver pistachios to Wonderful past Crop Year 2018, but who delivered pistachios to Wonderful in Crop Year 2018, would NOT be eligible for the 2018 Grower Partner Bonus.

"This past week, your office reached out to our accounting offices about an advance of the 2018 Grower Partner Bonus for the following non-members: Gradon Farms; Kamm South; Lincoln Grantor Farms, LLC; Manning Farms, LLC; McConnell Farms, LLC; and Sommerville Farms ('Assemi-affiliated growers').

"On February 6, 2019, you informed Wonderful that Kamm South, Manning Farms, LLC, and McConnell Farms, LLC would not deliver their pistachios to Wonderful in Crop Year 2019. This position, which you have taken over e[-]mail and telephone, is that they are not bound by the Assemi agreement, which includes Crop Year 2019. Although we have a different understanding of the agreement, based on your position, the Assemi-affiliated growers do not have a contract with Wonderful.

"I don't know at this time if Gradon Farms, LLC, Lincoln Grantor Farms, LLC, or Sommerville Farms plan on delivering their Crop Year 2019 pistachios to Wonderful. If they do not, then they too do not have a contract with Wonderful.

"Therefore, based on our previously explained policy, any Assemi-affiliated grower who does not have a contract with Wonderful for post-Crop Year 2018 pistachio deliveries are not eligible for the 2018 Grower Partner Bonus. Also note that we will not finalize the Crop Year 2018 Grower Partner Bonus terms until the end of October. It therefore goes without saying that we will not make the requested advance for any Assemi-affiliated grower without a contract to deliver to Wonderful Crop Year 2019 pistachios.

"We request that you pass along our policy to the Assemi-affiliated growers. We remain optimistic that the Assemi-affiliated growers will deliver their Crop Year 2019 pistachios to Wonderful, in which case they will be eligible to receive the Grower Partner Bonus for Crop Year 2018 pistachios. With harvest fast approaching, please respond by September 3rd whether any, and which, Assemi-affiliated growers will deliver their pistachios to Wonderful in the 2019 Crop Year."

On September 2, 2019, Kevin e-mailed Anzaldo. The e-mail was sent on behalf of the majority of the named plaintiffs in the Assemi lawsuit. The e-mail reads, in relevant part:

> "Under the Amended Restated Membership and Marketing Agreement ('the Agreement') in which the Co-Op Assemi Entities participate as members of Wonderful and under the contracts between Gradon Farms, LLC, and Lincoln Grantor Farms, LLC, on the one hand, and Wonderful Pistachios, on the other hand ('the Wonderful Pistachios Agreements'),[8] we wish to affirm our intent to deliver to Wonderful and Wonderful Pistachios our 2019 pistachio crop and to abide fully by our contractual obligations under those agreements. However, based on the August 31, 2019 e-mail that was sent by you to Keith Thomsen and Jon Reiter[9] and on recent conversations we have had with you and with Craig Cooper, we have heard for the first time that Wonderful Pistachios now takes the position that the 30% Grower Partner Bonus that has been traditionally paid by Wonderful Pistachios to its growers is merely a discretionary bonus that can be withheld if a grower decides to take his pistachios to another processor the following year.

> "It is not a term of the Agreements that Wonderful and/or Wonderful Pistachios are permitted to opt out of paying the Co-Op Assemi Entities and/or the Non-Co-Op Assemi Entities any portion of the total price that other Wonderful member growers and Wonderful Pistachios growers receive for their 2019 crop. In other words, payment of the entire price to

---

**8** The record on appeal does not contain the "Amended [and] Restated Membership and Marketing Agreement" or the " 'Wonderful Pistachios Agreements' " referenced in the e-mail.

**9** According to allegations in, and an exhibit to, the first amended complaint filed in the Assemi lawsuit, on August 31, 2019, Anzaldo e-mailed Keith Thomsen and Jon Reiter (who were alleged to be "principals of Assemi-related growers"), as follows: ". . . Our position is that Gradon Farms; Kamm South; Lincoln Grantor Farms, LLC; Manning Farms, LLC; McConnell Farms, LLC; and Sommerville Farms ('Assemi-Affiliated Growers') have an agreement to deliver to Wonderful through the 2019 crop year. If any of these growers don't deliver their crop to Wonderful in Crop Year 2019 then we would consider that to be a breach and we will not pay them a 2018 Grower Partner Bonus. [¶] . . . [¶] We hope and expect that all of these growers will deliver their 2019 crop to us and regarding their 2018 grower bonus they will be treated like every other grower who delivers their 2019 crop to Wonderful."

the Co-Op Assemi Entities and the Non-Co-Op Assemi Entities is mandatory and no portion is discretionary. Among other things, this conclusion follows from language that appears in the [Pistachio MOU] . . . ," citing and quoting paragraphs 1.(b) and 1.(d) of the Pistachio MOU.

Paragraphs 1.(b) and 1.(d) of the Pistachio MOU read as follows:

Paragraph 1.(b): "Assemi [Growers] may terminate the pistachio agreement(s) and exit a [W-]Paramount [Co-Op] to which it contributes pistachios (i) upon the occurrence of a change of control (i.e., ownership or management) or an estate event (i.e., death or permanent incapacity), or (ii) if, in any year, [W-]Paramount provides Assemi [Growers] with a return per pound of pistachios that is 5% or 10 cents (whichever is lesser) lower than the 3 year average return paid to other pistachio growers by the next 2 largest pistachio processors."

Paragraph 1.(d): "In the event that [W-]Paramount offers a non-[W-]Paramount affiliated pistachio member of a [W-]Paramount [Co-Op] a bonus in respect of the 5 consecutive crop years starting on September 1, 2014 and ending on August 31, 2020, then Assemi [Growers] will be eligible for any such bonus, and the applicable [W-]Paramount [Co-Op] shall pay such bonus to Assemi [Growers] promptly after the amount is determined by [W-]Paramount."

Kevin's September 2, 2019 e-mail continued:

"Having an assurance that Wonderful and Wonderful Pistachios will pay us fully for our 2018 and 2019 pistachio crops if we deliver our 2019 pistachio crop as we plan to do in the coming days is critically important to us before the crop is actually delivered. **We demand written assurance from Wonderful and Wonderful Pistachios by 5:00 p.m. Wednesday, September 4, 2019** that the Co-Op Assemi Entities and the Non-Co-Op Assemi Entities will be paid the same total price that other Wonderful member growers and Wonderful Pistachio growers are paid for their 2019 crop, as required under the Agreements, regardless of whether they deliver their 2020 crop to Wonderful and/or Wonderful Pistachios and we do not. If you do not supply us immediately with such a written assurance, we will treat your refusal to do so as a breach of the Agreements and **will not** deliver our 2019 pistachio crop to Wonderful and Wonderful Pistachios.

"If you base your new position on your interpretation of the Agreements, please identify what terms in the Agreements give Wonderful and/or Wonderful Pistachios the discretion to discriminate as to what price is paid for the 2019 crop for growers who deliver to you only their 2019

11.

crop in contrast to growers who deliver to Wonderful and/or Wonderful Pistachios both their 2019 and 2020 crops."  (Boldface in original.)

On September 4, 2019, Anzaldo e-mailed Kevin and stated he would respond by September 6, 2019.  Kevin replied that same day, as follows:

"[U]nder California Commercial Code [section] 2609, you are in breach of our Agreements for failing to give us adequate assurance.  We will give you until 5:00 p.m. tomorrow, September 5, 2019 for you to cure the breach.  Yes answers (and only yes answers) from you to both of the following two questions would be treated by us as a cure of your breach:

"1.     Do you agree, if we deliver our 2019 pistachio crop to you but do not deliver our 2020 pistachio crop to you, that (a) we will still receive the same total price per [pound] for our 2019 pistachio crop that we would receive if we also delivered our 2020 pistachio crop to you and (b) we will still receive the same total price per [pound] for our 2019 pistachio crop that you pay to other similarly situated co-op and non-co-op Wonderful growers, as the case may be (and at the same time and in the same manner that they are paid), who deliver their 2019 and 2020 crops to you?

"2.     Do you agree that, if we deliver our 2019 pistachio crop to you but do not deliver our 2020 pistachio crop to you, we will be fully and timely paid at the same price per [pound] and in the same manner that other similarly situated co-op and non-co-op Wonderful growers are paid for any remaining balances owed to us for the 2016, 2017, and 2018 crops regardless of whether we, unlike the co-op and non-co-op members to whom we are compared, choose not to deliver our 2020 crop to you?"

The following day, September 5, 2019, Anzaldo replied to Kevin by e-mail,[10] as follows:

_____

[10] The trial court sustained W-IFS's objection to a statement in defense counsel's declaration that " 'Wonderful, through Mr. Anzaldo, responded by e[-]mail on September 5, 2019.  A true and correct copy of that e[-]mail thread is attached hereto as Exhibit E.'  [¶]  Paragraph 6, Ex. E" (boldface omitted), on grounds of the best evidence rule (Evid. Code, § 1520) and hearsay (*id*., § 1200 et seq.).  Said exhibit contains the September 5, 2019, communications referenced above and Kevin's response thereto."  Assemi Brothers contends the court erred in sustaining the objection and urges this court

"First, we have never discussed or addressed the Co-Op Assemi Entities' 2019 crops at all. To our knowledge, we have made no statements at all with respect to crops from these entities and there exists no basis for you to demand adequate assurances with respect to these entities' crops. To be clear, all of our previous statements have related only to the Assemi-affiliated non-coop member growers Kamm South, LLC, Manning Avenue Pistachios, LLC, and McConnell Farms, LLC, except for my inadvertent reference to Gradon Farms and Lincoln Grantor Farms in an e[-]mail I sent to you on August 27th and to Keith Thompsen and Jon Reiter on August 31st, which we now realize are both already under contract with us (as you confirmed in your September 2nd correspondence to me).

"Second, this letter will confirm our position that the Co-Op Assemi Entities, as well as Gradon Farms and Lincoln Grantor Farms, are obligated to deliver their 2019 pistachio crop to us pursuant to the ordinary course WGC Co-Op agreements and Gradon's and Lincoln's agreements with Wonderful, and that WGC and Wonderful are (and have always been) ready, willing and able to completely perform as promised pursuant to the terms of those agreements. Please allow me to also confirm that if the Co-Op Assemi Entities honor their agreement to deliver their 2019 pistachio crop to WGC, the Co-Op Assemi Entities will receive the full amount of any CY2018 and CY2019 distribution to which they are entitled pursuant to the ordinary course terms of the applicable WGC Co-Op agreements (which will include a grower partner bonus for each of CY2018 and CY2019 as determined by WGC based on market conditions as in prior years). Similarly, we are confirming that with respect to Gradon and Lincoln, we will pay them their applicable CY 2018 and 2019 grower partner bonuses as determined by Wonderful based on market conditions as in prior years and which has always been done. There is and has never been any issue about these entities' 2019 crops or their bonuses for CY2018 or CY2019 (except for my inadvertent inclusion of Gradon and Lincoln in a couple of prior e[-]mails).

"We do expect the Co-Op Assemi Entities (as defined in your letter) and Gradon and Lincoln to deliver their 2019 crop to us as previously agreed

---

to consider the exhibit. Assuming, without deciding that the court erred in this regard, we will consider the exhibit. As discussed, *post*, we are of the opinion the exhibit will not change the propriety of summary judgment. (See *Jorgensen v. Loyola Marymount University* (2021) 68 Cal.App.5th 882, 888 [A trial court's erroneous exclusion of evidence on summary judgment does not require automatic reversal. Rather, an appellate court will "examine the record as a whole to see if [the excluded evidence] changes the propriety of summary judgment under governing law."].)

and as they are obligated to do pursuant [to] their agreement.  We will keep our end of the bargain.  We expect these entities to do the same."

Later that day, Kevin responded to Anzaldo and indicated Anzaldo's e-mail did not satisfy him.  He contended Anzaldo's response was evasive and stated that anything other than a " 'yes' " response to the two questions that he set out in his previous e-mail of that same day would be construed as a " 'no' " and that he would treat Anzaldo's response as a breach of their agreements.  He closed, saying, "You still have until 5:00 p.m. today to cure the breach by answering 'yes' to the two questions."  The record on appeal does not contain a further response from Anzaldo.

## II.     Procedural Background

### A.     *The Assemi Lawsuit*

The next day, September 6, 2019, the Assemi Growers filed their original complaint in the Assemi lawsuit.  Wonderful Pistachios and other affiliated associations cross-complained in the Assemi lawsuit on July 16, 2020.

After entry of judgments in the W-IFS promissory note and guaranty lawsuits (discussed, *post*), the Assemi lawsuit proceeded to trial on several claims including Assemi Brothers' claim for breach of contract based on its theory that Wonderful Pistachios anticipatorily repudiated, and thereby breached, the Pistachio MOU.  On December 13, 2023, a verdict was rendered on that cause of action but, as of the date of this opinion, it does not appear that the case has proceeded to final judgment.  The jury's verdict reads, in pertinent part:

> "1.     <u>The Assemi Co-Op Growers' Claims for Breach Regarding the Crop for Crop Year 2019 (Adequate Assurance)</u>
>
> "(a)     On the Assemi Co-Op Growers' claims for breach of contract against Wonderful Growers Cooperative as to the crop for Crop Year 2019, we find in favor of the Assemi Co-Op Growers and against Wonderful Growers Cooperative.
>
> "____ YES                              __X_ NO

14.

"(b)    On the Assemi Co-Op Growers' claims for breach of the implied covenant of good faith and fair dealing against Wonderful Growers Cooperative as to the crop for Crop Year 2019, we find in favor of the Assemi Co-Op Growers and against Wonderful Growers Cooperative.

"____ YES                                    _X_ NO

"Complete the following only if you answer YES (finding in favor of the Assemi Co-Op Growers) to at least one of questions (a) or (b) above.

"We award the Assemi Co-Op Growers the following amount in damages for Wonderful Growers Cooperative's breach of contract or breach of the implied covenant of good faith and fair dealing:

"$_____0_____."

## B.    *W-IFS Sends Notices of Default and Files Two Separate Lawsuits*

On September 12 and 13, 2019, W-IFS sent Assemi Brothers and the Assemi guarantors notices of default in connection with the third amended promissory note. The notices stated Assemi Brothers was in default of subsections (a) and (c) of Section 6.6 of the third amended promissory note, which provide:

"Events of Default.  The occurrence of any of the following shall constitute an Event of Default hereunder:  [¶] . . . [¶]  6.6  Pistachio Delivery.  Upon the occurrence of any of the following:  [¶]  (a) At any time [Wonderful Pistachios] or its affiliates process less than 100% of the Pre-2020 Crop;  [¶] . . . [¶]  (c) At any time that any Assemi Grower declares its intent to (A) sell, convey or deliver any of the Pre-2020 Crop to a third party if the effect would be that [Wonderful Pistachios] or its affiliates would not process 100% of the Pre-2020 Crop; or (B) process any of the Pre-2020 Crop itself or directly or indirectly through its affiliates."

Section 8 of the third amended promissory note authorized W-IFS to accelerate all sums due under the promissory note if Assemi Brothers defaulted.  As a result, in its notice of default to Assemi Brothers, W-IFS "declare[d] the entire principal amount of the Note, together with all accrued interest thereon and all other amounts payable thereunder, are immediately due and payable."

On May 4, 2020, W-IFS filed its complaint in the W-IFS promissory note lawsuit against Assemi Brothers for breach of the third amended promissory note and for money

15.

had and received.  Also on May 4, 2020, W-IFS filed its complaint in the W-IFS guaranty lawsuit against the Assemi guarantors for breach of personal guaranties that Assemi Brothers would repay the promissory note.  The trial court consolidated the two W-IFS lawsuits and the Assemi lawsuit "for all purposes."

### C.    The Trial Court Grants Summary Adjudication in Favor of W-IFS and Enters Judgment in Both the W-IFS Promissory Note and W-IFS Guaranty Lawsuits

On March 23, 2023, W-IFS moved for summary judgment or, alternatively, summary adjudication in the W-IFS promissory note lawsuit.  On March 29, 2023, W-IFS moved for summary judgment or, alternatively, summary adjudication in the W-IFS guaranty lawsuit.  On August 9, 2023, the trial court, after conducting a hearing in connection with W-IFS's motions, granted summary adjudication of W-IFS claims for breach of contract in the W-IFS promissory note lawsuit and for breach of personal guaranties in the W-IFS guaranty lawsuit.[11]

On October 4, 2023, the trial court entered a separate judgment in the W-IFS guaranty lawsuit (i.e., case No. 20CECG01363) in favor of W-IFS and against each of the guarantors.  On October 17, 2023, the trial court entered a separate judgment in the W-IFS promissory note lawsuit (i.e., case No. 20CECG01378) in favor of W-IFS and against Assemi Brothers after W-IFS dismissed its remaining claim for money had and received.

On November 15, 2023, attorneys for W-IFS filed and served notices of entry of judgment in both matters.

### D.    Assemi Brothers and the Assemi Guarantors Appeal

On January 9, 2024, Assemi Brothers timely filed its notice of appeal in the W-IFS promissory note lawsuit, designated as Fifth District Court of Appeal case No. F087461.

---

[11] The trial court also granted summary adjudication of several affirmative defenses asserted by Assemi Brothers in the W-IFS promissory note and guaranty lawsuits.

16.

Also on January 9, 2024, Darius, Farid, Farshid, and Neema timely filed their notice of appeal in the W-IFS guaranty lawsuit, designated as Fifth District Court of Appeal case No. F087463. Two days later, on January 11, 2024, Kevin timely filed a notice of appeal in the W-IFS guaranty lawsuit, designated as Fifth District Court of Appeal case No. F087465.

The three appeals were consolidated by two orders of this court dated February 22, 2024, and October 30, 2024.[12]

## DISCUSSION

### I. Summary Judgment Law and Standard of Review

"A party may move for summary adjudication as to one or more causes of action within an action . . . if the party contends that the cause of action has no merit . . . [or] that there is no affirmative defense to the cause of action, . . . ." (Code Civ. Proc., § 437c, subd. (f)(1).) "A motion for summary adjudication . . . shall proceed in all procedural respects as a motion for summary judgment. . . ." (*Id.*, subd. (f)(2).)

"A plaintiff . . . has met that party's burden of showing that there is no defense to a cause of action if that party has proved each element of the cause of action entitling the party to judgment on the cause of action. Once the plaintiff . . . has met that burden, the

---

[12] We conclude the judgments entered against Assemi Brothers and in favor of W-IFS are final (not interlocutory) judgments and are appealable. (Civ. Code, § 904.1, subd. (a)(1).) Although the Assemi lawsuit, W-IFS promissory note lawsuit, and W-IFS guaranty lawsuit were consolidated by the trial court "for all purposes," which typically results in, and *may* require, one final judgment (*Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127, 1147), the judgments meet the elements of the collateral order doctrine—a doctrine that recognizes an order may operate the same as a final judgment even though other issues in the litigation have not been resolved. (*Reddish v. Westamerica Bank* (2021) 68 Cal.App.5th 275, 278). "When a court renders an interlocutory order collateral to the main issue, dispositive of the rights of the parties in relation to the collateral matter, and directing payment of money or performance of an act, direct appeal may be taken." (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368.) The separate judgments resolve all pending matters as they relate to W-IFS.

burden shifts to the defendant . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(1).) "A motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty." (*Id*., subd. (f)(1).)

"A trial court's order granting a motion for summary adjudication is reviewed de novo. [Citation.] In reviewing that order, we apply the same standards we apply in reviewing a trial court's order granting a motion for summary judgment." (*Smith v. Wells Fargo Bank, N.A.* (2005) 135 Cal.App.4th 1463, 1471.) "We consider all the evidence offered in connection with the motion, except that which the trial court properly excluded." (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1067.) "Evidence presented in opposition to summary judgment [or summary adjudication] is liberally construed, with any doubts about the evidence resolved in favor of the party opposing the motion." (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618 (*Regents*).) "The court's stated reasons for granting summary judgment [or summary adjudication] are not binding on us because we review its ruling, not its rationale." (*Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1168.)

## II. W-IFS Met Its Burden on Summary Adjudication

Assemi appellants challenge the trial court's grant of summary adjudication of W-IFS's claim that Assemi Brothers breached the third amended promissory note and its related claim that the Assemi guarantors breached their personal guaranties that the promissory note would be repaid. They argue that W-IFS was the first to breach the promissory note, thereby excusing Assemi Brothers' performance under the note.

### A. *Breach of the Third Amended Promissory Note*

To establish a breach of contract claim, a plaintiff must show " '(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's

breach, and (4) the resulting damages to the plaintiff.' " (*D'Arrigo Bros. of California v. United Farmworkers of America* (2014) 224 Cal.App.4th 790, 800.) For reasons set forth below, we conclude W-IFS met its initial burden on summary adjudication to establish its breach of contract claim.

The evidence W-IFS produced in support of its motions shows that it entered into a valid contract with Assemi Brothers (i.e., the third amended promissory note) and that it performed under the promissory note by loaning money to Assemi Brothers pursuant to the promissory note. The promissory note contains express terms specifying events that would constitute a default under the note. Among other things, section 6.6(a) of the promissory note provides that a default will occur "[u]pon the occurrence of any of the following: [¶] . . . At any time [Wonderful Pistachios] or its affiliates process less than 100% of the Pre-2020 Crop[.]" The "Pre-2020 Crop" is defined in the promissory note to mean "the Assemi Growers' pistachios grown on the Pistachio Land and harvested prior to July 1, 2020." The term "Pistachio Land" is defined to mean "the Assemi Growers' land on which pistachios are grown." The promissory note further provides that, "[u]pon the occurrence of an Event of Default . . . , the Noteholder [i.e., W-IFS] may at its option, by written notice to the Maker [i.e., Assemi Brothers] . . . declare the entire principal amount of this Note, together with all accrued interest thereon and all other amounts payable hereunder, immediately due and payable."

In addition, W-IFS produced a stipulation signed by counsel for the Assemi appellants and W-IFS, which states, in pertinent part: "WP&A (i.e., Wonderful Pistachios . . .) and its affiliates processed less than 100% of the Assemi Growers' 2019 crop, which was part of the pre-2020 crop, as those terms are defined and used in sections 1 and 6.6(a) of the [third amended promissory note]." W-IFS also produced discovery responses from Touchstone Pistachio Company, LLC, admitting that it earned a gross profit of approximately $1.07 million and a net profit of approximately $980,000 from crop year 2019 pistachios sold to it by the Assemi Growers. This evidence is

19.

sufficient to demonstrate a breach of the third amended promissory note under the express provisions of the note.

W-IFS also provided copies of the notices it sent to Assemi Brothers and each of the Assemi guarantors advising them that Assemi Brothers had defaulted on the third amended promissory note and that W-IFS elected to accelerate all sums due under the note.

Finally, W-IFS produced evidence in the form of a declaration from Jason Crooks, the senior director of treasury for The Wonderful Company LLC, wherein he states his duties include "provid[ing] accounting and treasury-related support to [W-IFS]." Crooks averred W-IFS "disbursed $75 million to Assemi Brothers" pursuant to the note; Assemi Brothers' last payment toward the debt was made on August 27, 2021; after that payment was made, "the outstanding principal balance on the loan was $2,293,072.47"; thereafter, fees and interest continued to accrue on the promissory note; as of the date of his declaration, March 23, 2023, the total amount due under the note was $2,489,752.88, which will continue to accrue interest; and "Assemi Brothers has not repaid [W-]IFS the amounts due under the Note." In support of his declaration, Crooks provided "a true and correct copy of [his] Excel Workbook reflecting the payments and amounts due under the Note beginning on September 13, 2019, the date notice of default was provided."

W-IFS met its burden on summary adjudication to produce evidence sufficient to establish each element of its claim for breach of contract which would entitle it to summary adjudication on the claim in its favor. (See Code Civ. Proc., § 437c, subd. (p)(1).) Consequently, the burden shifted to Assemi Brothers to produce evidence sufficient to create a triable issue of material fact as to the claim. (*Ibid.*)

### B.     *Breach of Personal Guaranties*

To establish a breach of guaranty claim, a plaintiff must show "(1) there is a valid guaranty, (2) the borrower has defaulted, and (3) the guarantor failed to perform under the guaranty." (*Gray1 CPB, LLC v. Kolokotronis* (2011) 202 Cal.App.4th 480, 486.)

20.

The evidence submitted by W-IFS in support of its claim against the Assemi guarantors for breach of personal guaranties includes the same evidence it submitted in support of its breach of contract claim against Assemi Brothers. Thus, our previous analysis of the evidence in support of the latter claim is applicable here. In addition, W-IFS has produced evidence to demonstrate the existence of valid guaranties signed by each of the Assemi guarantors to repay the debt owed on the third amended promissory note and that the Assemi guarantors, likewise, have not repaid the debt. Consequently, W-IFS met its initial burden on summary adjudication to establish its claim against the Assemi guarantors for breach of their personal guaranties and shifted the burden to the Assemi guarantors to produce evidence sufficient to create a triable issue of material fact as to the claim.

## III. Did the Assemi Appellants Raise a Triable Issue of Fact with Respect to the Respective Claims Against Them?

### A. The Court Properly Sustained Objections to the Declarations of Farid and Darius

The Assemi appellants contend the trial court erred by sustaining objections to the declarations of Farid, Darius and Jennifer Lake. We disagree.

The Assemi appellants argue we should apply a de novo standard in reviewing the trial court's evidentiary rulings. They observe there is a split of authority as to the appropriate standard of review to apply when reviewing a trial court's evidentiary rulings in connection with a summary judgment motion. In *Pipitone v. Williams* (2016) 244 Cal.App.4th 1437, the court concluded a de novo review was the appropriate standard to apply. (*Id*. at p. 1451.) Other courts have concluded the weight of authority is that such determinations are reviewed for abuse of discretion. (*O'Neal v. Stanislaus County Employees' Retirement Assn.* (2017) 8 Cal.App.5th 1184, 1198–1199; *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 852.) Another court has determined "[d]e novo review is proper where evidentiary objections raise questions of law," but "evidentiary

21.

objections based on lack of foundation, qualification of experts, and conclusory and speculative testimony are traditionally left to the sound discretion of the trial court." (*Alexander v. Scripps Memorial Hospital La Jolla* (2018) 23 Cal.App.5th 206, 226.) We need not weigh in on which standard of review is most appropriate under the circumstances because we conclude the trial court's evidentiary rulings withstand the stricter, de novo standard of review.

The trial court sustained objections to paragraphs 6 through 9 of Farid's declaration. The Assemi appellants challenge the court's determinations with regard to paragraphs 6 through 8.[13] The portions of Farid's declaration challenged on appeal are his statements that (1) when he signed the third amended promissory note, he "understood the obligations of the Loan MOU, Pistachio MOU, and [third amended promissory note] to be intertwined" (2) he understood the latter "to include an implied term that Assemi Brothers would not be held in default if the Assemi Growers exercised their right to terminate their pistachio agreement because Wonderful [Pistachios] refused (or threatened to refuse) to fully pay for the pistachio crops to be delivered to [W-]Paramount (and later, to Wonderful Pistachios . . .) or its affiliates for processing, consistent with the terms of the Pistachio MOU"; and (3) he would not have signed the MOU and promissory notes had he known Wonderful Pistachios would take a contrary position. The court likewise sustained an objection to Darius's declaration which confirmed his understanding was the same as Farid's with respect to the existence of an implied term in the promissory note.

W-IFS objected to the evidence as irrelevant, speculative, and violative of the best evidence rule. The court did not specify the grounds upon which it sustained the objection.

---

[13] The Assemi appellants incorrectly contend W-IFS did not object to paragraph 9 of Farid's declaration (objection No. 8) and did not raise any challenge with regard thereto.

22.

Addressing W-IFS's relevance objection, Assemi appellants argue the evidence was relevant because "[t]he 'parties' intentions' are one factor courts use in determining whether a contract contains an implied term," citing *Grebow v. Mercury Ins. Co.* (2015) 241 Cal.App.4th 564, 578–579 (*Grebow*). In response, W-IFS argues " '[t]he parties' undisclosed intent or understanding is irrelevant to contract interpretation,' " quoting *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 956 (*Founding Members*), and citing several additional cases for the same proposition. We believe W-IFS has the better argument.

"Although the intent of the parties determines the meaning of the contract, the relevant intent is the objective intent as evidenced by the words used by the parties and not either party's subjective intent." (*Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 838.) "[E]vidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language." (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1166, fn. 3.)

The evidence at issue speaks only to Farid and Darius's subjective intent and understanding in executing the third amended promissory note. There is no evidence in the record that Farid or Darius ever expressed that intent and understanding to W-IFS and, other than the express provisions of the promissory note, there is no evidence of W-IFS's intent and understanding.

We conclude the trial court properly excluded the evidence at issue.

**B.** ***The Court Properly Sustained Objections to Jennifer Lake's Declaration***

Jennifer Lake averred she was the chief accounting officer for Maricopa Orchards, LLC, that she has personal knowledge of the facts stated in her declaration, and that "Assemi Brothers . . . fully paid the principal and base interest rate, applicable here, under the [third amended promissory note]." W-IFS objected to this latter statement on

23.

grounds it lacks foundation, lacks personal knowledge, and violates the best evidence rule. The trial court sustained the foundation objection.[14]

On appeal, the Assemi appellants argue "[a]s the Chief Financial Officer for one of the [Assemi lawsuit] plaintiffs, . . . Lake would be in a position to verify whether such payments had in fact been made." This contention lacks an evidentiary basis in the record and is conclusory. There is no evidence that Lake or Maricopa Orchards, LLC, was responsible for making or tracking Assemi Brothers' payments on the third amended promissory note, that Lake or Maricopa Orchards, LLC, actually made or tracked those payments, or that Lake had access to and reviewed any records of payments toward the promissory note.

In their opening brief on appeal, the Assemi appellants argue Maricopa Orchards, LLC, is a "co-Plaintiff in the [Assemi lawsuit] and is one of the [Assemi Growers]," that "Maricopa Orchards *may* have made the payment for Assemi Brothers," and that W-IFS "had already admitted that Maricopa Orchards was part of Assemi Brothers' 'team.' " (Italics added.) These contentions do not aid the Assemi appellants. The statement that Maricopa Orchards, LLC, "may" have made such a payment is speculative and plainly allows for the possibility it *may not* have made such a payment.

The Assemi appellants further argue that if W-IFS "wanted to challenge . . . Lake's basis of knowledge, it should have taken her deposition" or "sought to call her as a witness so it could challenge the basis of her knowledge." However, it was the Assemi appellants' burden—not W-IFS's—to provide an adequate foundation to support Lake's averment of personal knowledge. (Evid. Code, § 403, subd. (a)(2).) Although it is true, as the Assemi appellants contend, that a witness's own testimony may be admissible to demonstrate personal knowledge (*People ex rel. Owen v. Media One Direct, LLC* (2013)

---

[14] In addition, the court aptly noted that this averment is "vague and ambiguous as to whether [Assemi Brothers] paid off the full amount owed," i.e., the accelerated amounts or only "regular payments up to the time of the default."

24.

213 Cal.App.4th 1480, 1484), supporting and opposing declarations must "show affirmatively that the affiant is competent to testify to the matters stated" (Code Civ. Proc., § 437c, subd. (d)). A conclusory allegation of personal knowledge does not meet this requirement. (*Snider v. Snider* (1962) 200 Cal.App.2d 741, 754.)

We conclude the trial court's evidentiary ruling was correct. Consequently, the Assemi appellants did not raise a triable issue of material fact in opposition to W-IFS's evidence of nonrepayment.

### C.   *The Assemi Appellants' Argument for an Implied Term in the Third Amended Promissory Note*

#### 1. *Civil Code Section 1642*

The Assemi appellants rely on Civil Code section 1642 to argue that the Loan MOU, Pistachio MOU and third amended promissory note should be construed together for purposes of determining W-IFS's rights and obligations under the third amended promissory note. Civil Code section 1642 provides: "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."

W-IFS observes that Civil Code section 1637 provides: "For the purpose of ascertaining the intention of the parties to a contract, if otherwise doubtful, the rules given in this chapter [of which Civil Code section 1642 is a part] are to be applied." It argues that, in this case, the intention of the parties is not doubtful and, consequently, Civil Code section 1642 does not apply.

Manifestly, the two MOU's and the third amended promissory note were not between the same parties. The Pistachio and Loan MOU's were between Assemi Brothers and Wonderful Pistachios whereas the third amended promissory note was made by Assemi Brothers in favor of W-IFS.

Assemi appellants argue "courts have consistently held that [Civil Code s]ection 1642 and the common law principles it embodies apply 'whether each of the several

25.

instruments was signed by all or only some of the parties to the transaction,' " quoting *Collins v. Home Savings & Loan Assn.* (1962) 205 Cal.App.2d 86, 98, and citing *Holquin v. Dish Network LLC* (2014) 229 Cal.App.4th 1310, 1322, and *Harm v. Frasher* (1960) 181 Cal.App.2d 405, 413–415.  In support of their argument, the Assemi appellants correctly note the same individual, Craig Cooper, albeit in different capacities, signed the MOU's and countersigned the third amended promissory note.[15]  They further argue, without supporting evidence, that W-IFS is a financial subsidiary of Wonderful Pistachios.  Although there does not appear to be any dispute that the two companies are affiliated, there is no evidence in the record to support the contention that one is a subsidiary of the other.[16]  The precise nature of the relationship between the two entities is not evident from the record on appeal.  As W-IFS correctly observes, the Assemi appellants have not contended that W-Paramount (now known as Wonderful Pistachios) and W-IFS are alter egos.

---

[15] Cooper signed the MOU's in his capacity as senior vice president of W-Paramount and countersigned the third amended promissory note in his capacity as senior vice president of W-IFS.

[16] To support their contention, the Assemi appellants provide the following citation:  "See the California Secretary of State's registration for The Wonderful Company, LLC at https://bizfileonline.sos.ca.gov/search/business and for [W-IFS]" at the same URL (uniform resource locator) address.  No additional discussion is provided.  The URL takes a user to the California Secretary of State's Web site where users can enter an entity name and receive information concerning that entity's registration information.

The Web site does not support the contention that W-IFS is a subsidiary of W-Paramount (or its successor, Wonderful Pistachios).  A review of the filings for The Wonderful Company LLC and for W-IFS that are available on the Web site merely list "Stewart and Lynda Resnick Revocable Trust, dated December 27, 1988 as amended" (some capitalization omitted) as "Manager(s) or Member(s)" for The Wonderful Company LLC and W-IFS.  The filings disclose nothing with regard to the relationship between W-Paramount (or, its successor, Wonderful Pistachios) and W-IFS.  (See <https://bizfileonline.sos.ca.gov/search/business> [as of Feb. 3, 2026].)

There is no evidence in the record that W-Paramount (now Wonderful Pistachios) had the authority to bind W-IFS, which is a separate and independent legal entity. Notwithstanding, there is evidence that the MOU's and the original promissory note (as well as subsequent versions thereof, including the third amended promissory note) are interrelated. This, however, by itself, does not constitute evidence of the implied term urged by the Assemi appellants. We consider that issue next.

### 2. *Whether the Proffered Implied Term Should Be Read into the Third Amended Promissory Note*

In *Grebow*, relied on by the Assemi appellants, the court considered whether an implied term should be read into an insurance contract in order to provide reimbursement to an insured for costs incurred in avoiding imminent insurance damage. (*Grebow*, *supra*, 241 Cal.App.4th at pp. 567, 578.) Concluding there was no such obligation, the court wrote: " 'Implied terms are not favored in the law, and should be read into contracts only upon grounds of obvious necessity. [Citation.] A court may find an implied contract provision only if (1) the implication either arises from the contract's express language or is indispensable to effectuating the parties' intentions; (2) it appears that the implied term was so clearly within the parties' contemplation when they drafted the contract that they did not feel the need to express it; (3) legal necessity justifies the implication; (4) the implication would have been expressed if the need to do so had been called to the parties' attention; and (5) the contract does not already address completely the subject of the implication.' " (*Id*. at pp. 578–579.)

Notably, when W-Paramount and Assemi Brothers entered into the Loan MOU, they specifically stated that any loan that might result would be "subject to acceleration upon terms to be agreed." This is a clear acknowledgment that W-Paramount and Assemi Brothers had not reached any agreement or understanding with regard to acceleration at the time the two MOU's were entered into. Consequently, we cannot conclude that those parties contemplated any terms concerning events that would give the ultimate lender the

right to accelerate the underlying debt. Similarly, there is no extrinsic evidence of what was contemplated by W-IFS in that regard.

In our view, the proffered implication does not appear to arise from the contract's express language and is directly contrary to the pistachio processing default provision, which states that an event of default occurs "[a]t any time [Wonderful Pistachios] or its affiliates process less than 100% of the Pre-2020 Crop." The pistachio processing default provision appears to completely address the subject of the implication and does not suggest that any exceptions are to be recognized.

The foregoing conclusion is further supported by the fact the third amended promissory note contains an integration clause that states: "This Note constitutes the entire contract between the Parties with respect to the subject matter hereof and supersedes all previous agreements and understandings, oral or written, with respect thereto (including, without limitation, the Original Note)." The concept of an integrated contract is addressed in Code of Civil Procedure section 1856, which provides, in part: "Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms included therein may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement." (*Id*., subd. (a).)

Whether an agreement is integrated is a question of law for determination by the court. (Code Civ. Proc, § 1856, subd. (d); *Hayter Trucking, Inc. v. Shell Western E&P, Inc.* (1993) 18 Cal.App.4th 1, 14 (*Hayter*).) "The crucial issue in determining whether there has been an integration is whether the parties intended their writing to serve as the exclusive embodiment of their agreement. The instrument itself may help to resolve that issue. It may state, for example, that 'there are no previous understandings or agreements not contained in the writing,' and thus express the parties' 'intention to nullify antecedent understandings or agreements.' " (*Masterson v. Sine* (1968) 68 Cal.2d 222, 225–226) "Indeed, if such a clause is adopted and used by the parties, it may well be conclusive on the issue of integration." (*Banco Do Brasil, S.A. v. Latian, Inc.* (1991) 234 Cal.App.3d

28.

973, 1001, overruled on other grounds in *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1179–1182.)

"When the parties to a written contract have agreed to it as an 'integration'—a complete and final embodiment of the terms of an agreement—parol evidence cannot be used to add to or vary its terms." (*Masterson v. Sine*, *supra*, 68 Cal.2d at p. 225.) "[I]f a writing is deemed integrated, extrinsic evidence is admissible only if it is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." (*Hayter*, *supra*, 18 Cal.App.4th at p. 15; accord, *Banco Do Brasil, S.A. v. Latian, Inc.* *supra*, 234 Cal.App.3d at p. 1001.) In our view, the language of the third amended promissory note is not susceptible to an implied exception to the pistachio processing default provision or acceleration provision.

The Assemi appellants also argue that the Pistachio MOU gave Assemi Brothers the contractual right to " 'terminate' the MOU upon the occurrence of certain conditions (including failure to be paid in full)," citing paragraph 1.(b) and 1.(d) of the Pistachio MOU. Although they do not clearly state how this asserted termination right supports their argument, they offer this point in support of their contention that the "implied term arises from the express language of the contracts and is indispensable to effectuating the parties' intentions." (Boldface omitted.) We disagree.

Paragraph 1.(d) does not give Assemi Brothers a contractual right of termination. It only states circumstances under which Assemi Brothers is entitled to a bonus. Paragraph 1.(b), on the other hand, does speak to a right of termination "upon the occurrence of a change of control (i.e., ownership or management) or an estate event (i.e., death or permanent incapacity)" or "if, in any year, [W-]Paramount provides Assemi with a return per pound of pistachios that is 5% or 10 cents (whichever is lesser) lower than the 3 year average return paid to other pistachio growers by the next 2 largest pistachio processors." The Assemi appellants argue Wonderful Pistachio's alleged anticipatory breach of the Pistachio MOU denies them the bonus they would otherwise be due, and,

without that bonus, Wonderful Pistachio would necessarily be paying them less than the amount required under paragraph 1.(b) of the Pistachio MOU. This contention, however, is speculative and unsupported by any evidence in the record on appeal. Simply stated, there is no evidence that any event specified in paragraph 1.(b) actually occurred or that such an event was inevitable absent payment of a bonus.[17]

The Assemi appellants also contend that the absence of the proffered implied term would lead to absurd results because it would "absolve[] [Wonderful Pistachios] of its obligations under the contracts, while at the same time continuing to hold . . . Assemi Brothers and the [Assemi] Guarantors liable if they refuse to do business with [Wonderful Pistachios] after [Wonderful Pistachios] has itself defaulted on its obligations." They argue: "To hold that [Wonderful Pistachios] could refuse to pay for the pistachios it received with no consequences would render the consideration [Wonderful Pistachios] agreed to provide illusory" and render it "null and void."

We do not agree with the premise that Wonderful Pistachios would be absolved of its contractual obligations if W-IFS exercised its contractual right to accelerate the debt underlying the third amended promissory note. There is no provision in the promissory note that absolves Wonderful Pistachios of its contractual obligations. Moreover, nothing has prevented Assemi Brothers from suing Wonderful Pistachios on its breach of contract claim, which it is prosecuting as part of the lead case in this consolidated action.

The Assemi appellants argue that, without the implied term, Wonderful Pistachios could refuse to accept delivery of the Assemi Growers' pistachio crops "for no reason at all" (italics omitted) and thereby force Assemi Brothers into a default on the third

_____

**17** Of course, a material breach of contract will excuse the nonbreaching party from future performance under a contract. (*De Burgh v. De Burgh* (1952) 39 Cal.2d 858, 863.) In the next section, we assume, arguendo, the existence of the implied term urged by the Assemi appellants and consider whether, under those circumstances, appellants have raised a triable issue of material fact. As discussed, *post*, we conclude they have not.

amended promissory note. This, however, is a strawman argument. There is no evidence that Wonderful Pistachios ever refused or threatened to refuse the Assemi Growers' delivery of pistachios.

" ' "We do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there." [Citation.] Courts may find an implied term in a contract only under "limited circumstances" on grounds of " 'obvious necessity' " "where the term is 'indispensable to effectuate the *expressed* intention of the parties.' " ' " (*Grebow*, *supra*, 241 Cal.App.4th at p. 579, italics added, quoting *Abers v. Rounsavell* (2010) 189 Cal.App.4th 348, 361–362.) " '[C]ourts cannot make better agreements for parties than they themselves have been satisfied to enter into or rewrite contracts because they operate harshly or inequitably. It is not enough to say that without the proposed implied covenant, the contract would be improvident or unwise or would operate unjustly. Parties have the right to make such agreements. The law refuses to read into contracts anything by way of implication except upon grounds of obvious necessity.' " (*Frankel v. Board of Dental Examiners* (1996) 46 Cal.App.4th 534, 545.) The Assemi appellants have not demonstrated that the implied term they urge was a necessity.

The evidence does not support the existence of the implied term urged by the Assemi appellants.

### D. Even If This Court Were To Assume the Existence of the Proffered Implied Term, the Evidence in Opposition to W-IFS's Motions Is Insufficient To Raise a Triable Issue of Material Fact

#### 1. *Anticipatory Breach*

The Assemi appellants contend Wonderful Pistachios was the first party to breach the pistachio delivery contracts (through anticipatory repudiation) and that Assemi Brothers had a right to terminate those contracts. It is established that "a material breach [of contract] excuses further performance by the [nonbreaching] party." (*De Burgh v. De*

31.

*Burgh*, *supra*, 39 Cal.2d at p. 863; see *Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 506 [" 'one party's repudiation discharges any remaining duties of performance of the other party with respect to the expected exchange' "].) The Assemi appellants' anticipatory breach argument is new matter that was not put at issue by W-IFS's two complaints and, therefore, constitutes an affirmative defense. (Code Civ. Proc., § 431.30, subd. (b)(1), (2); *Quantification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 812.)

Having determined that W-IFS met its initial burden in its motions for summary adjudication, "the burden shifts to the defendant[s] . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(1).) "There is a genuine issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845.) Accordingly, to avoid summary adjudication the Assemi appellants were required to make out a prima facie case in support of their affirmative defense that W-IFS committed a prior material breach of contract.

" 'Anticipatory breach occurs when one of the parties to a bilateral contract repudiates the contract. The repudiation may be express or implied. An express repudiation is a clear, positive, unequivocal refusal to perform [citations]; an implied repudiation results from conduct where the promisor puts it out of his power to perform so as to make substantial performance of his promise impossible.' " (*Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes* (2010) 191 Cal.App.4th 435, 463.) A good faith dispute, however, does not necessarily amount to a repudiation. (*Golden West Baseball Co. v. City of Anaheim* (1994) 25 Cal.App.4th 11, 49, fn. 43.)

If a party anticipatorily repudiates a contract, the injured party has "an election of remedies"—they may "wait[] until the time for performance and then exercise[] their

remedies for actual breach of contract," assuming the repudiating party does not perform, or they may "elect[] to treat the repudiation as an anticipatory breach and sue immediately." (*Daum v. Superior Court* (1964) 228 Cal.App.2d 283, 288.) "A repudiation may be nullified by a retraction of the statement before the injured party materially changes his or her position in reliance on it or brings suit." (1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 891, p. 937; see *Guerrieri v. Severini* (1958) 51 Cal.2d 12, 19.)

### 2. *Commercial Code section 2609*

Commercial Code section 2609 provides: "(1) A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return. [¶] . . . [¶] (4) After receipt of a justified demand failure to provide within a reasonable time not exceeding 30 days such assurance of due performance as is adequate under the circumstances of the particular case is a repudiation of the contract."

### 3. *Assuming, for Purposes of Argument Only, the Existence of the Implied Term Urged by the Assemi Appellants, Have Appellants Made Out a Prima Facie Case of Breach by Wonderful Pistachios?*

For purposes of argument, if we assume, contrary to our previous determination, that the third amended promissory note contained the implied term urged by the Assemi appellants, we now consider whether the Assemi appellants have made out a prima facie case of anticipatory breach.

The Assemi Brothers' demands for adequate assurance were expressly premised on Wonderful Pistachios' alleged repudiation of an "Amended Restated Membership and Marketing Agreement" (Marketing Agreement) and "contracts between Gradon Farms,

33.

LLC, and Lincoln Grantor Farms, LLC, on the one hand, and Wonderful Pistachios, on the other hand" (Gradon/Lincoln contracts). However, the record on appeal does not include any of those documents. Nor does it appear those documents were presented to the trial court in connection with W-IFS's summary adjudication motions. Rather, the Assemi appellants relied on the terms of the Pistachio MOU in asserting their affirmative defense. The omission of the very documents upon which Assemi Brothers' demand for adequate assurance was premised is unexplained.

In their original demand for adequate assurance sent on September 2, 2019, Assemi Brothers stated, "[i]t is not a term of the Agreements [i.e., the Marketing Agreement and Gradon/Lincoln contracts] that Wonderful and/or Wonderful Pistachios are permitted to opt out of paying the Co-Op Assemi Entities and/or the Non-Co-Op Assemi Entities any portion of the total price that other Wonderful member growers and Wonderful Pistachios growers receive for their 2019 crop. In other words, payment of the entire price to the Co-Op Assemi Entities and the Non-Co-Op Assemi Entities is mandatory and no portion is discretionary. Among other things, this conclusion follows from language that appears in the [Pistachio MOU] . . . ," citing and quoting paragraphs 1.(b) and 1.(d) of the Pistachio MOU.

We have already discussed the fact that none of the events identified in paragraph 1.(b) of the Pistachio MOU ever occurred. Paragraph 1.(d) provides: "In the event that [W-]Paramount offers a non-[W-]Paramount affiliated pistachio member of a [W-]Paramount [Co-Op] a bonus in respect of the 5 consecutive crop years starting September 1, 2014 and ending on August 31, 2020, then Assemi [Growers] will be eligible for any such bonus" and will be promptly paid the bonus "after the amount is determined by [W-]Paramount."

The language of that provision does not indicate that the bonus is mandatory as claimed by the Assemi appellants. The language is clearly conditional—that is, payment of a bonus is only required if Wonderful Pistachios (formerly, W-Paramount) offers such

34.

a bonus to a non-Wonderful Pistachio affiliated pistachio member of a Wonderful Pistachio Co-Op. The record does not reveal that Wonderful Pistachios offered any grower a bonus identified in paragraph 1.(d). Nor does the record reveal that Wonderful Pistachios ever disavowed its obligations under paragraph 1.(d). Rather, Wonderful Pistachios took the position that the Assemi Growers must deliver all five years to become eligible for a 2018 bonus—which was the specific yearly bonus that Filipponi of Maricopa Orchards, LLC inquired about an advance. On its face, paragraph 1.(d) is susceptible to Wonderful Pistachios' interpretation and the Assemi appellants have not argued to the contrary.

Wonderful Pistachios' communications do not condition payment of a 2019 bonus upon a commitment by the Assemi Growers to deliver to it their 2020 pistachio crops—which is how Assemi Brothers interpreted those communications. A repudiation must be clear, positive, and unequivocal in order to give rise to an anticipatory breach. (*Martinez v. Scott Specialty Gases, Inc.* (2000) 83 Cal.App.4th 1236, 1247; *California Canning Peach Growers v. Harris* (1928) 91 Cal.App. 654, 656.) The alleged repudiation by Wonderful Pistachios does not appear to have been "clear, positive, and unequivocal." However, we will assume, again for purposes of argument only, that Wonderful Pistachios' communications gave Assemi Brothers reasonable grounds for insecurity, thus entitling it to seek adequate assurance.

Before Anzaldo of "Wonderful" substantively responded to Assemi Brothers' original demand for adequate assurance, Assemi Brothers indicated it would only accept an affirmative response to the following questions as adequate assurance:

> "1.     Do you agree, if we deliver our 2019 pistachio crop to you but do not deliver our 2020 pistachio crop to you, that (a) we will still receive the same total price per [pound] for our 2019 pistachio crop that we would receive if we also delivered our 2020 pistachio crop to you and (b) we will still receive the same total price per [pound] for our 2019 pistachio crop that you pay to other similarly situated co-op and non-co-op

35.

Wonderful growers, as the case may be (and at the same time and in the same manner that they are paid), who deliver their 2019 and 2020 crops to you?

"2. Do you agree that, if we deliver our 2019 pistachio crop to you but do not deliver our 2020 pistachio crop to you, we will be fully and timely paid at the same price per [pound] and in the same manner that other similarly situated co-op and non-co-op Wonderful growers are paid for any remaining balances owed to us for the 2016, 2017, and 2018 crops regardless of whether we, unlike the co-op and non-co-op members to whom we are compared, choose not to deliver our 2020 crop to you?"

It is unknown whether the above queries correspond to obligations contained in the Marketing Agreement or the Gradon/Lincoln contracts because those contracts are not part of the record. The queries do not, however, appear to correspond fully with the Pistachio MOU.

The Pistachio MOU only obligated Wonderful Pistachios to pay a bonus to Assemi Growers in the event it offered a bonus to "a non-[Wonderful Pistachio] affiliated pistachio member of a [Wonderful Pistachio] Coop." Yet, the demand for adequate assurance does not distinguish between cooperative members that are affiliated with Wonderful Pistachios and those that are not so affiliated. Rather, the demand seeks assurance that Assemi Growers will be treated the same as "similarly situated co-op and non-co-op Wonderful growers."

The Assemi appellants provide no argument to demonstrate that Assemi Brothers' demand for adequate assurance mirrors or corresponds to the performance it was entitled to. Under Commercial Code section 2609, when reasonable grounds for insecurity exist, the insecure party is only entitled to seek adequate assurance of "*due* performance." (Cal. U. Com. Code, § 2609, subd. (1), italics added.) Assemi Brothers have not demonstrated that their two queries correspond to "due" performance under the Pistachio MOU, the Marketing Agreement, or the Gradon/Lincoln contracts. Thus, we see no justifiable

reason for Assemi Brothers to require Wonderful Pistachios' assurances take the form they demanded.

In his substantive response to Assemi Brothers' demand for adequate assurance, Anzaldo (1) indicated Wonderful Pistachios' position that "the Co-Op Assemi Entities, as well as Gradon Farms and Lincoln Grantor Farms, are obligated to deliver their 2019 pistachio crop" to a Wonderful Pistachios affiliated cooperative association "pursuant to the ordinary course WGC Co-Op[18] agreements and Gradon's and Lincoln's agreements with Wonderful"; (2) confirmed that Wonderful stood "ready, willing and able to completely perform as promised pursuant to the terms of those agreements"; (3) confirmed that "if the Co-Op Assemi Entities honor their agreement to deliver their 2019 pistachio crop to WGC" they will receive "the full amount of any CY2018 and CY2019 distribution to which they are entitled pursuant to the ordinary course terms of the applicable WGC Co-Op agreements (which will include a grower partner bonus for each of CY2018 and CY2019 as determined by WGC based on market conditions as in prior years)"; and (4) confirmed that Gradon Farms and Lincoln Grantor Farms will be paid "their applicable CY 2018 and 2019 grower partner bonuses as determined by Wonderful based on market conditions as in prior years and which has always been done."

Anzaldo continued, stating, "There is and has never been any issue about these entities' 2019 crops or their bonuses for CY2018 or CY2019 (except for my inadvertent inclusion of Gradon and Lincoln in a couple of prior e[-]mails)." He concluded with the following statement: "We will keep our end of the bargain. We expect these entities to do the same."

---

**18** The reference to WGC Co-Op is presumably a reference to Wonderful Growers Cooperative.

Thus, Anzaldo plainly communicated that Wonderful Pistachios would pay grower bonuses for 2018 and 2019 to Assemi Growers if they delivered their 2019 crop year pistachios to Wonderful Pistachios, which the Assemi Growers were required to do under the terms of the Pistachio MOU. Moreover, Anzaldo had previously communicated that he understood that Manning Avenue Pistachios, LLC, Kamm South, LLC, and McConnell Farms, LLC, were not majority owned by the Assemi Brothers or their principals and, therefore, were not obligated under Wonderful Pistachios' contracts with Assemi Brothers.

The Assemi appellants argue Anzaldo's response was inadequate because he stated the Assemi Growers would be paid "pursuant to the ordinary course terms of the applicable WGC Co-Op agreements," which they contend meant Wonderful Pistachios "had discretion in whether to pay the Grower Partner Bonus" and other sums owed to the Assemi Growers. In essence, they contend Wonderful Pistachios was under a mandatory duty to pay the bonus—a construction that is belied by the terms of the Pistachio MOU. The Pistachio MOU clearly states that the obligation to pay a bonus was conditioned on Wonderful Pistachios offering a bonus to other non-Wonderful affiliated growers.[19] That Wonderful Pistachios intended to pay the bonus for both the 2018 and 2019 crop years is clearly stated in Anzaldo's response.

The Pistachio MOU gave Wonderful Pistachios the discretion to determine the amount of any such bonus. It provided that, "[i]n the event" a bonus was paid to other non-Wonderful affiliated growers, Wonderful Pistachios would "pay such bonus to Assemi promptly *after the amount is determined by [W-]Paramount*." (Italics added.) The Assemi appellants did not provide any evidence that the amount of the bonus was to

---

[19] It is unknown whether the Marketing Agreement and Gradon/Lincoln contracts, referenced in Assemi Brothers' demand for adequate assurances, provided the same or different terms as the Pistachio MOU because those agreements are not part of the record on appeal.

be determined pursuant to any obligatory formula.  They only provided evidence that, in the past, bonuses "typically constituted between 30 and 40% of the total payment for the pistachio crop, had always been paid, and had not been treated as a discretionary component of the pistachio crop payment."  At a minimum, these facts show that the parties had established an "ordinary course" of payment under the terms of their contracts—which Anzaldo committed to adhere to.

Thus, assuming, *for purposes of argument only*, that the third amended promissory note contained an implied term that W-IFS would not declare a default and accelerate the debt underlying the note if Wonderful Pistachios breached the Pistachio MOU (or the Marketing Agreement and Gradon/Lincoln contracts), the Assemi appellants have not presented sufficient evidence to make out a prima facie case of anticipatory breach on the part of Wonderful Pistachios, let alone W-IFS.

### DISPOSITION

The judgment rendered in favor of W-IFS and against Assemi Brothers in case No. 20CECG01378, and the judgment rendered in favor of W-IFS and against Darius Assemi, Farid Assemi, Farshid Assemi, Kevin Assemi, and Neema Assemi in case No. 20CECG01363, are affirmed in their entirety.  W-IFS is entitled to its costs on appeal in both matters.

PEÑA, J.

WE CONCUR:


DETJEN, Acting P. J.


DE SANTOS, J.

39.